IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 13, 2004 Session

## STATE OF TENNESSEE v. ROBERT "BOBBY" POWELL

**Direct Appeal from the Circuit Court for Gibson County
No. 16418    Clayburn L. Peeples, Judge**

---

**No. W2003-02723-CCA-R3-CD  - Filed August 27, 2004**

---

The defendant, Robert "Bobby" Powell, pled guilty to statutory rape and sexual battery, Class E felonies, in exchange for an effective two-year sentence as a Range I, standard offender, with the manner of service to be determined by the trial court. Finding that a sentence less serious than confinement would depreciate the seriousness of the offenses, the trial court denied the defendant's request for probation or other alternative sentencing and ordered that he serve his sentence in the Department of Correction. The court subsequently denied the defendant's motion to reconsider, and the defendant appealed to this court. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

L. L. Harrell, Jr., Trenton, Tennessee, for the appellant, Robert "Bobby" Powell.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Garry G. Brown, District Attorney General; and Elaine G. Todd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On January 6, 2003, the Gibson County Grand Jury returned a five-count indictment charging the seventy-one-year-old defendant with rape, statutory rape, sexual battery, especially aggravated sexual exploitation of a minor, and sexual exploitation of a minor, all involving the same seventeen-year-old victim. On July 14, 2003, the defendant pled guilty to the statutory rape and sexual battery counts of the indictment in exchange for concurrent sentences of two years for each conviction, with the manner of service to be determined by the trial court at a later sentencing hearing. Pursuant to

the guilty plea agreement, the remaining counts of the indictment were dismissed. The prosecutor explained the facts underlying the defendant's convictions at the guilty plea hearing:

> [PROSECUTOR]: Your Honor, this involves a young girl who at the time this incident occurred she lacked about three months being eighteen years of age. She had been basically kicked out of her house, had come out and was residing in the house with [the defendant] and his sons and on a couple of occasions [the defendant] did touch her and did have not [sic] sexual intercourse as such - -
>
> THE COURT: Penetration?
>
> [PROSECUTOR]: Other type of - -
>
> THE COURT: Penetration.

Further information is provided in the statement the defendant gave to Gibson County Sheriff's Department investigators on October 1, 2002, at the outset of their investigation of the case:

> I Robert Powell let [the victim][1] move into my home about 3 mo. ago because she wanted to finish high school at Gibson County. Since she moved into my home, I have bought her cloths [sic] - paid for her lunch at school. Gave her money for her graduation pictures.
>
> She let me make pictures of her nude and partly nude. She would also set [sic] in my lap and wanted to be played with. Felt of her breast on few occasion she was willing. She also let me finger her. She would stand beside by [sic] recliner want me to rub her with her cloths [sic] on. I did write this statement at [sic] my o[w]n free will.

The defendant testified at the September 2, 2003, sentencing hearing that he was currently seventy-two years old, divorced, and the father of five sons whose respective ages were forty-three, forty, thirty-seven, twenty-two, and eighteen. His youngest son, Justin, attended Gibson County High School and still lived at home. The defendant testified he had been disabled since 1978 due to a bad back and was unable to work. In addition, he suffered from "[b]reathing problems," for which he took daily "breathing treatments." The defendant described himself as "[j]ust hanging on" and said that his condition was not improving.

---

[1] It is the policy of this court to refer to minor victims of sexual assault by their initials only.

The defendant testified he pled guilty to theft in 1960 and served a portion of his sentence before receiving a pardon from the governor.[2] He said he had been a registered voter since his release from prison and had served as a constable for six years. The defendant testified his only other "brush with the law" had occurred ten or eleven years previously, when he was in a fight for which he received a ten-day suspended sentence.

As for his behavior in the instant case, the defendant explained that Justin, who was "sort of dating" the victim, had asked if she could move in with them after her mother and stepfather, and later her father, had kicked her out of their respective homes. Although he had not really wanted her to move in, the defendant had consented because the victim had nowhere else to go. After her move, the defendant gave the victim money for school, bought her school clothes, and paid for her school photographs. He said the victim never shared a bedroom with him.

The defendant acknowledged he had known that the victim was underage when the acts at issue occurred. He was aware that such conduct would "not be tolerated" and realized that he had "made a hell of a mistake." The defendant stated that he was sorry, that he no longer "even want[ed] a camera in [his] house," and that, if released into the community, he would not again violate the law. The defendant's presentence report, as well as copies of the photographs he had taken of the victim, were admitted into evidence at the hearing.

Seventy-six-year-old Aaron Goad testified he had been raised in the same community as the defendant and had known him "[p]ractically all [his] life." The defendant had worked for him when he was the head of the Brown Shoe Company in Dyer, and Goad lived less than a mile and a half from the defendant's home. Over the years, Goad had observed the defendant, who had been left with two small sons to raise on his own, providing for his children's needs. To the best of Goad's knowledge, the defendant was a good father. Goad testified the defendant was a "peace loving" person, and he did not believe the defendant posed any threat to the community. He said he believed the defendant had learned a lesson and would behave himself in the future. Goad acknowledged on cross-examination that he was not aware of the defendant's having taken nude photographs of the victim and had not seen the photographs. He conceded that incarceration was an appropriate punishment in some sexual offense cases involving an underage victim.

At defense counsel's request, several other unnamed individuals present at the sentencing hearing stood to demonstrate to the trial court their support of the defendant. However, in response to a query by the prosecutor, none indicated they had seen the photographs at issue in the case.

At the conclusion of the hearing, the trial court denied the defendant's request for probation or other alternative sentencing and ordered that he serve his sentence in confinement. On September

---

[2]The defendant's counsel advised the trial court that, after checking "the file," he had discovered that the defendant and his codefendant were each sentenced to three years and that the codefendant was granted a pardon. Trial counsel told the trial court he was unable to find the pardon granted to the defendant. He said he had checked with the defendant, but after forty-three years, his records were gone.

30, 2003, the defendant filed a "Motion for New Trial and/or Motion to Reconsider," which included an affidavit from the victim requesting that the defendant be placed on probation for the length of his sentence. By order entered October 27, 2003, the trial court denied the defendant's motion. The defendant thereafter filed a timely notice of appeal to this court.

## ANALYSIS

The defendant cites, *inter alia,* his lack of any substantial criminal record, the fact that he still has a young son who depends on him at home, and his advanced age and failing health to argue that the evidence was insufficient to overcome the presumption in favor of alternative sentencing. In addition, he argues that it was error for the prosecutor to present, or the trial court to consider, any evidence of his subsequent arrest at the hearing on his motion to reconsider the sentencing. The State argues that the record supports the trial court's imposition of a sentence of incarceration. We agree with the State.

Initially, we note that nothing in either the transcript of the hearing or in the trial court's order indicates that the court considered the defendant's subsequent arrest for selling prescription medication as the basis for its denial of his motion to reconsider sentencing. Thus, we conclude this issue is without merit.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

As a standard offender convicted of two Class E felonies, the defendant was presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (2003). Moreover, because he received a sentence of eight years or less, he was eligible for probation and the trial court was required to consider probation as a sentencing option. Id. § 40-35-303(a), (b). However, although the defendant was entitled to the presumption of alternative sentencing, he was not automatically entitled to probation as a matter of law. See id. § 40-35-303(b). "The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof." State v. Kenneth Jordan, No. M2002-01010-CCA-R3-CD, 2003 WL 21051739, at *3 (Tenn. Crim. App. May 8, 2003) (citing State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996)). The burden was upon the defendant to show he was a suitable candidate for probation. Tenn. Code Ann. § 40-35-303(b) (2003); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); Boggs, 932 S.W.2d at 477. In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527.

The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2003).

The trial court did not base its denial of probation or other alternative sentencing on the defendant's prior record, judging it to be too far removed in time from the present offenses. However, the court placed great weight on both the nature and circumstances of the offenses, noting the graphic, sexual nature of the photographs and the defendant's violation of a position of trust, in its determination that a sentence less serious than confinement would unduly depreciate the seriousness of the offenses. The trial court explained its ruling:

> I do not consider [the defendant's] previous law enforcement problems to be significant enough to matter as an enhancement factor. There were two minor incidents long ago. I -- there's been no proof or evidence regarding the problem of sexual exploitation of minors or of the creation of child pornography. Clearly, however, that's a problem and clearly this was sexual exploitation of a minor and clearly the photographs in question, which were extremely explicit -- very graphically sexually oriented nude photographs of a minor. I'm not exactly sure what the definition of child pornography is but I will assure all of you folks that you would think that's what it was if you saw the photographs.

> Clearly, the defendant abused a position of trust in this case.

> Clearly, a 17 year old, even two months away from her 18th birthday who has been kicked out of her own home and who has been taken into another person's home is particularly vulnerable to offenses of this nature and clearly this was done by the defendant to gratify his pleasure.

> I'm afraid, [defense counsel], that under the circumstances in view of those factors and in view of the extreme seriousness of these offenses, I don't think anything but incarceration is appropriate. I think anything else would denigrate the seriousness of the offenses.

We agree with the trial court that the young victim was in an extremely vulnerable position, having been, in rapid succession, forced out of both her mother's and father's homes. We further agree with the court's assessment of the graphic and exploitive nature of the photographs, most of which depict the victim with her pants and underwear either off or pulled down around her knees and her legs spread and one of which depicts her in the act of inserting a large, cylindrical-shaped object into her vagina. Moreover, we note that, although the defendant apologized for his actions at the sentencing hearing, stating that he had made a mistake, he attempted in his earlier statement to police to cast the victim in the light of a willing participant and/or temptress. Therefore, in light of these

circumstances, we conclude that the record supports the trial court's denial of alternative sentencing and its imposition of a sentence of incarceration.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE